WESTINGHOUSE ELECTRIC MFG. CO. v. WAGNER ELECTRIC MFG. CO.

(District Court, E. D. Missouri, E. D. December 5, 1914.)

No. 4457.

1. PATENTS (§ 322*)—SUIT FOR INFRINGEMENT—ACCOUNTING.

Where, on reversal of a decree in an infringement suit awarding damages to complainant, the cause was remanded. with directions to recommit to a master for a new hearing "on the evidence already submitted and such additional testimony as may be offered," it was competent for defendant, on the recommitment, to introduce testimony showing that mistakes were made by the witnesses at the former hearing as to the number of infringing articles made and sold by it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. § 322.*]

2. PATENTS (§ 328*)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.

An award made to complainant for profits realized by defendant from infringement of the Westinghouse patent, No. 366,362, for an electric converter, based on the evidence taken by a master.

In Equity. Suit by the Westinghouse Electric Manufacturing Company against the Wagner Electric Manufacturing Company. On ex-

ceptions to report of special master. Exceptions sustained, and decree for complainant. See, also, 129 Fed. 604; 173 Fed. 361, 97 C. C. A. 621; and 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653.

Paul Bakewell, of St. Louis, Mo., and Kerr, Page, Cooper & Hayward, of New York City, for complainants.

E. E. Huffman, of St. Louis, Mo., and Melville Church, of Washington, D. C., for defendants.

DYER, District Judge. On the 16th of February, 1904, in this court, Judge Adams presiding (129 Fed. 604), a decree was entered in this cause, which among other things recited:

"It is ordered, adjudged, and decreed as follows: That letters patent of the United States issued to George Westinghouse, Jr., for electrical converter, dated July 12, 1887, and numbered 366,362, and duly assigned to the complainant, Westinghouse Electric & Manufacturing Company, are good and valid in law, particularly as to the fourth claim thereof, and that complainant, Westinghouse Electric & Manufacturing Company, is the owner of said letters patent and all rights thereunder. That George Westinghouse, Jr., was the first, true, and original inventor of the inventions and improvements described and claimed in claim 4 of said letters patent. That the defendant herein, Wagner Electric Manufacturing Company, has infringed the fourth claim of said letters patent, and upon the exclusive rights of the complainant under the same, by making, using and selling electric converters or transformers embodying in their construction and principle of operation the combination, substantially as described in said Westinghouse patent, of an electric converter or transformer constructed with open spaces in its core, an inclosing case, and a nonconducting fluid in said case adapted to circulate through said spaces and about the converter or transformer. That complainant do recover of the defendant the profits, gains, and advantages which the said defendant had derived, received, or made by reason of said infringement by said defendant of claim 4 of the said Westinghouse patent, No. 366,362, and that the complainant do recover of the said defendant any and all damages which the complainant has sustained by reason of said infringement by said defendant in the manufacture, use, or sale of electrical transformers or converters found to be in infringement of claim 4 of said Westinghouse patent, No. 366,362, as hereinbefore specified, or any electrical converters or transformers which embody in their construction and principle of operation the combination, substantially as described in said Westinghouse patent, of an electrical converter or transformer constructed in its core, an inclosing case, and nonconducting fluid or gas in said case adapted to circulate through the spaces and about the converter. And this cause is hereby referred to Henry H. Denison, Esq., as special master, to take and state an account of said gains, profits, and advantages, to assess such damages, and to report thereon with all convenient speed."

In pursuance of this decree the special master proceeded to make inquiry, and thereafter made report to the court of what in his opinion had been the gains, profits, and advantages to the defendant in the manufacture, use, or sale of electrical transformers or converters found to be in infringement of claim 4 of said Westinghouse patent, No. 366,362, or any electrical converters or transformers which embody in their construction and principle of operation * * * an electrical converter or transformer constructed with open spaces in its core, etc. The master found the plaintiff's damages amounted to the

sum of $132,433.35, for which amount he recommended that judgment be entered.

Exceptions were filed to this report by the defendant, and after a full hearing was had this court, among other things, said:

"The order of the court made by Judge Adams limited the recovery to the profits, gains, and advantages which the defendant made by reason of infringement of claim 4 of complainant's patent No. 366,362. The burden of proof was upon the complainant to show by competent evidence that the defendant had realized profits and advantages by reason of the infringement of claim 4. The master recommends a judgment against the defendant for all the profits derived by it from the sale of all the transformers made and sold by the defendant within a certain period regardless of what per cent., if any, the patented device (claim 4) bore to the whole. This in my judgment was beyond the scope of inquiry contained in the order of reference and cannot be upheld. The demurrer of the defendant at the close of complainant's case should have been sustained. The master's report will be disapproved and set aside, and a judgment will be entered in favor of the complainant for nominal damages (one dollar) only and the costs of this proceeding."

From this decision an appeal was prosecuted to the Circuit Court of Appeals for the Eighth Circuit. That court, 173 Fed. 361, 97 C. C. A. 621, affirmed the decision of this court, and said:

"We are unable to concur in the master's findings. We think claim 4 is a limited detailed claim—open spaces in the core being one of its chief or distinguishing features. This was the view entertained by Judge Amidon upon an application for a temporary injunction, and by Judge Adams at the hearing upon which the case was referred to the master. (C. C.) 129 Fed. 604. See, also, Westinghouse Electric & Mfg. Co. v. Union Carbide Co., 117 Fed. 495 [55 C. C. A. 230]; Westinghouse Electric & Mfg. Co. v. American Transformer Co. (C. C.) 121 Fed. 560; Id. (C. C.) 130 Fed. 550."

The Supreme Court of the United States considered the case on certiorari. 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. [N. S.] 653.

This court and the Court of Appeals, as I understand it, held that the burden of proof was on the complainant, and not on the defendant, to show what profits the defendant had made from the sale of transformers which embodied the invention of claim 4 of the patent in suit. The Supreme Court took a different view, and held that the burden of proof was on the defendant, as will be seen by the following taken from the opinion of that court:

"Other questions of law and fact involved in the accounting were not considered. Neither the court nor the master discussed the question of apportionment *and the record does not afford satisfactory data for entering a final decree.* This no doubt arises from the fact that both parties relied entirely upon their theory that the burden was on the other, that facts were not proved that might otherwise have been established."

The court gave the following directions:

That "the case be recommitted to a master for a new hearing on all the questions involved in the original reference, and on evidence already submitted and such additional testimony as may be offered, for further proceedings not inconsistent with this opinion."

For the reason above stated, and for that reason alone, I take it, the Supreme Court reversed the Court of Appeals. The case was to be

heard by the master "on all the questions involved in the original reference, and on evidence already submitted *and such additional testimony as may be offered.*"

The complainant offered no evidence whatever at the second hearing. The defendant, in obedience to the decision of the Supreme Court assumed the burden of showing the "apportionment," which the Supreme Court held had not been discussed either by the court or the master. Judge Adams held, and the Court of Appeals held:

"That claim 4 is of a limited, detailed nature, and that the defendant had the right at all times to make transformers which had no spaces in the core."

The Supreme Court did not hold to the contrary, and therefore the decision of the Court of Appeals in this particular is the law of the case.

The real question for consideration presented by the evidence—evidence taken at the former hearing, and evidence taken at the present hearing—is this:

"What profits, if any, has the defendant received from the manufacture and sale of transformers?"

The master finds now, as he did in his first report, that the profit or advantage to the defendant from the use of the infringing invention amounts to the sum of $132,433.35. This result is obtained now, as it was in his first report, by considering *only,* as I take it, the evidence in the original record. All of the testimony taken by the defendant at the present hearing seems to have been ignored by the master. The Supreme Court was evidently of the opinion that the evidence was not sufficient to warrant it in rendering a final decree. If it had been sufficient, there would have been no necessity for again sending the matter to the master.

The evidence taken before the master on the part of the defendant was competent, relevant, and pertinent, and should have been admitted by the master and considered by him. It is not my purpose to discuss the evidence in detail.

[1] It was contended by the plaintiff upon the hearing that the testimony offered by the defendant at the present hearing, tending to prove that mistakes were made by witnesses at the former hearing as to the number of transformers, made and sold by the defendant, that infringed plaintiff's patent, is incompetent, and that the stipulation entered into by counsel in the former record as to the number of infringing transformers cannot now be shown to have been erroneous and incorrect. With this contention the court does not agree. The testimony as to the incorrectness of the number of transformers made and sold by the defendant, that infringed claim 4 of the patent, seems to the court to have been fully sustained by the evidence offered by the defendant at the present hearing.

[2] The defendant claims that the amount which the master finds ($132,433.35) is erroneous and grossly excessive. It is now insisted by the defendant in the argument of counsel that the finding of the master was based upon the schedule offered at the first hearing and upon the assumption that the defendant made a profit of 25 per cent.

upon the whole of its transformer business. The defendant contends that the master was in error both as to the volume of business and the per cent. thereof to which plaintiff is entitled.

It appears from the evidence that at the present hearing before the master the defendant, for the purpose of ascertaining the result of its business during the accounting period, employed a certified public accountant by the name of Williams to make a complete audit of its books for that period. The result of his examination was that, instead of making a profit, the defendant actually lost $3,828.30. It appears from his statement that this loss resulted in part from certain unusual losses, aggregating $67,983. New Record, pp. 47, 262, 263. He finds that, but for what he calls unusual losses, the company would have made a profit of $64,154.72.

Assuming this to be correct, what part of this profit was earned by the sale of transformers that infringed claim 4 of plaintiff's patent? Witness Fynn prepared an analysis of the schedule made by Williams from the defendant's books. New Record, pp. 414–417. From this analysis it appears that the net amount received from the sale of infringing transformers did not exceed $308,128.77. New Record, p. 416, and part of Defendant's Exhibits F, A.

This result seems to have been arrived at by deducting from the total amount of transformer sales the amount received for transformers that did not infringe complainant's claim 4, as testified to by Schwedtman, Selinger, Timmerman, and others. The testimony of all of these witnesses, taken in connection with the exhibits referred to by them, and consisting in part of the evidence, satisfies the court that the master was in error in making the findings he did.

It is difficult, if not impossible, to determine with exactness the amount of profits realized by the defendant from the sale of transformers that were due to the infringement of plaintiff's patent. The amount of such profits can only be approximately estimated. This amount does not, in my judgment, exceed the sum of $10,000. The evidence in the case now is so full and complete that the court of final resort will be able to enter, if my estimate is found incorrect, such a decree as will put an end to what has been a long, expensive and tedious litigation.

The judgment of this court is that the exceptions to the master's report must be sustained, and a judgment in favor of the plaintiff for the sum of $10,000 and costs be entered. It is accordingly so ordered.